UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:** 5:26-cv-06013-BFM **Date:** October 20, 2026

**Title:** *Kelvin Stanley Lopez Zacatares v. Markwayne Mullin et al*

==========================================================

Present: The Honorable Brianna Fuller Mircheff, United States Magistrate Judge

| | |
|---|---|
| Christianna Howard | N/A |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Petitioner | Attorneys Present for Respondents |
| N/A | N/A |

**Proceedings: (In Chambers) Order Granting Petition (ECF 1)**

Petitioner Kelvin Stanley Lopez Zacatares, proceeding pro se, filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on October 12, 2026. (ECF 1 ("Pet.").) Respondents filed their Answer (ECF 8 ("Answer").) Having reviewed those two filings, the Court declines to wait for Petitioner's reply, and instead, **grants** the Petition.

## I. Factual Background

Petitioner is a noncitizen who is currently detained at Adelanto ICE Processing Center, within the Central District of California. (Pet. ¶ 11.) Petitioner entered the United States and was detained by DHS in 2023. (Pet. ¶ 2.) Shortly thereafter, Petitioner was released on parole. (Pet. ¶ 3; ECF 1-1 at 14.) Following his release, Petitioner settled in California, and reported for each of his ICE appointments. (Pet. ¶¶ 8-11.) Petitioner also applied for asylum; that application is still pending. (Pet. ¶ 2; ECF 1-1 at 16.)

On October 3, 2026, Petitioner was detained by law enforcement on suspicion of driving under the influence of alcohol; he was subsequently released from state custody. (Pet. ¶ 11.) On October 5, 2026, an immigration officer contacted Petitioner and told him to present himself to an immigration

officer. (Pet. ¶ 10.) Petitioner did so. After Petitioner checked in, an immigration officer asked Petitioner whether he was detained by law enforcement on October 3, and Petitioner confirmed that he had been. (Pet. ¶ 11.) An immigration officer then detained Petitioner, without further notice or an opportunity to respond. (Pet. ¶ 11.) Petitioner was transported to the Adelanto Detention Center, where he has been held since. (Pet. ¶¶ 11-12.)

## II. Analysis

Petitioner argues that his detention violates due process and asks for release. (Pet. ¶¶ 58-60.) Respondents argue, in a conclusory fashion, that Petitioner's detention was justified because his arrest constituted changed circumstances or a violation of his release conditions. (Answer at 2.)

After reviewing both parties' pleadings, the Court concludes that Petitioner's claim is meritorious. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The protection afforded by the Due Process Clause runs to citizens and noncitizens alike. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."). Evaluating the contours of Petitioner's due process rights proceeds in two steps: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

1. *Protected liberty interest*

On the first point, the Court finds that Petitioner has a protected liberty interest in remaining at liberty in the community absent sufficient justification for his re-detention.

Conditional release from physical restraint may give rise to a protected liberty interest. *Young v. Harper*, 520 U.S. 143, 147-49 (1997). Once an individual is granted conditional release, therefore, he may have a protected liberty interest in remaining in the community—and an attendant right to procedural protections before that liberty is revoked. *See id.* (due process requires pre-deprivation hearing before revocation of pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). In deciding whether a specific form of conditional release gives rise to a protected liberty interest, courts compare the form of conditional release at issue with the parolee's liberty interest as described in *Morrissey v. Brewer*, a seminal case in this area. *See González-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole enables a parolee "to do a wide range of things" available to individuals who have never been convicted of any crime—to live at home, work, be with his friends and family, and "form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," including monitoring and requiring authorization to work and travel, the parolee's "condition is very different from that of confinement in a prison." *Id.* Moreover, a parolee "relie[s] on at least an implicit promise that parole will be revoked only if she fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly

"inflicts a grievous loss on the parolee," and as such, a parolee possesses a protected interest in his continued liberty. *Id.* at 481-84.

Petitioner was initially paroled into the United States and released on conditional parole. (Pet. ¶ 3; ECF 1-1 at 14.) His release on parole was an implicit promise that he would be able to stay in the community for the duration of his administrative proceedings absent changed circumstances. Among other things, his conditional release allowed him to live in the community and pursue his asylum application. (Pet. ¶ 2; ECF 1-1 at 4, 16.) The Court thus easily concludes—as have many courts in this Circuit—that once Petitioner was paroled, he gained a protected liberty interest in remaining out of custody. *E.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody"); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (finding that "the government's decision to release an individual [from immigration custody] creates an implicit promise that the individual's liberty will be revoked only if they fail to abide by the conditions of their release") (cleaned up); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.").

2. *Process owed in connection with re-detention*

Given that Petitioner has a protected liberty interest in his conditional release, the question is what process he is owed before the government would take that liberty interest away. Petitioner claims that due process required process *before* he was taken into custody. (Pet. ¶¶ 58-60.) He thus argues that

the appropriate habeas remedy is for him to be released back to the community. (Pet. at 21.) The Court agrees.

To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming, without deciding, that *Mathews v. Eldridge* applies in immigration detention context, and collecting authority applying *Mathews* to immigration detention). The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. Each of the three *Mathews* factors supports Petitioner's constitutional right to process *before* he was re-detained.

As to the first factor, and as set out in the prior section, the liberty interest at stake here is significant. Petitioner has a substantial interest in remaining in his home, working, and maintaining his relationships in the community. *See Ortega*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:** 5:26-cv-06013-BFM **Date:** October 20, 2026

**Title:** *Kelvin Stanley Lopez Zacatares v. Markwayne Mullin et al*

==========================================================

Turning to the second *Mathews* factor, there is a significant risk that the government will erroneously deprive Petitioner of that liberty interest if it does not provide him with pre-deprivation process. The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)) And where a petitioner has not received any custody hearing or opportunity to address alleged violations before his parole is revoked, "the risk of an erroneous deprivation [of liberty] is high." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up).

Indeed, civil immigration detention is constitutionally permissible only to prevent flight or protect against danger to the community. *See Zadvydas*, 533 U.S. at 690. Evaluation of the appropriateness of detention under § 1226(a) is keyed to those same two factors. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). It was those factors that were necessarily found when Petitioner was initially released. *See Noori v. LaRose*, 807 F. Supp. 3d 1146, 1167 (S.D. Cal. 2025) ("In general, '[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.'"); *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted) (a petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk"). And once he was released, he had a liberty interest "in remaining at liberty unless [he] no longer meets those criteria." *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185, at *13 (E.D. Cal. Sept. 5, 2025) (cleaned up).

In the context of civil immigration detention, then, it is not solely the violation itself that is compelling, but what a violation says about whether the individual poses a risk of flight or danger. *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025) (rejecting

argument that ICE can re-detain based on "purely technical violations," like being late to a check-in, without regard to whether that technical violation means that one is a flight risk or danger); *Bernal v. Albarran*, No. 25-CV-09772-RS, 2025 WL 3281422, at *6 (N.D. Cal. Nov. 25, 2025) (same).

As such, it does not "necessarily follow" from the allegation of a violation "that Petitioner can be detained for those violations without a hearing. That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *E.A. T.B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). Here, it does not appear that Petitioner was given a chance to dispute that a violation occurred or to persuade the decisionmaker that the any alleged violation did not make him a flight risk or danger. Notice and an opportunity to respond "'at a meaningful time and in a meaningful manner'" is the essence of procedural due process, *Mathews*, 424 U.S. at 333, and it was jettisoned here.

Finally, Respondents have not articulated any countervailing government interest—the third and final *Mathews* factor—that supports providing this process only after Petitioner's parole has been revoked. Due process "usually" requires a hearing *before* the State deprives a person of liberty or property. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Exceptions to that general rule are appropriate where quick action is necessary or where it is impractical to impossible to provide pre-deprivation process. *Id.* at 128. But neither of those exceptions appears to apply here.

Respondents' final argument is that Petitioner has the opportunity to ask for a bond hearing and that a post-detention bond hearing could cure any earlier error. (Answer at 2-3.) But most courts to have looked at the issue have found that a post-detention bond hearing would not undo the harm of a due

process violation because the petitioner "will have already suffered the harm" that such petitions raise—his potentially erroneous detention. *See*, *e.g.*, *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14 2025); *Hasratyan v. Bondi*, No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026) (concluding that where a petitioner received a procedurally deficient post-detention bond hearing, "the post-detention process Petitioner received and will receive is no substitute for the pre-detention process she was owed"); *Saballos Rosales v. Noem*, No. 5:26-CV-00112-JWH-MBK, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (granting TRO and finding that "the post-detention process [of a bond hearing] that Rosales did receive, and will receive, is no substitute for the pre-detention process she was owed.") (citing *Hasratyan*); *Charan S. v. Warden, CA City*, No. 1:26-cv-3017, TLN-JDP, 2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026) ("The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months"). This Court agrees with those authorities, and thus rejects Respondents' argument that the Petition should be denied based on the hypothetical availability of post-deprivation process.

In short, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing [or other procedure] is low." *Ortega*, 415 F. Supp. 3d at 970; *see also Morrissey*, 408 U.S. at 483 (noting that "the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has no interest in revoking parole without some informal procedural guarantees"). Because each of the *Mathews* factors favors Petitioner's bid for pre-deprivation process, the Court finds that Petitioner's detention—which

was accompanied by *no* notice or opportunity to respond—violates the Due Process Clause.

## III. Appropriate Remedy

As has been found in countless similar cases in this Circuit, the appropriate remedy in such cases is to order Petitioner placed in the position he would have been absent the due process violation—that is, he should be released from custody on the conditions that were previously imposed. *E.g.*, *Velasquez-Chinga v. Noem*, 2026 WL 311507, at *3; *Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1182 (D. Nev. 2025); *Mohammadi*, 2026 WL 607767, at *7.

## IV. Conclusion

Accordingly, Petitioner's Petition is **granted**. Petitioner Kelvin Stanley Lopez Zacatares (A# 246-797-576) is ordered immediately released on the parole conditions previously imposed. If they are in Respondents' custody or control, Petitioner should be released with any identity documents that were in his possession at the time of his detention.

Respondents shall file a status report confirming Petitioner's release within three days of his release from custody; if release is delayed for any reason, Petitioner shall promptly notify the Court.

Upon receipt of confirmation that Petitioner has been released, judgment will issue and the Court will close the case.

**IT IS SO ORDERED**

Initials of Preparer: ch